THOMAS W. PORTER ET AL. (PORTER BROS. & CO. ET AL.) *vs.* THE ORIENT INSURANCE COMPANY.

Third Judicial District, Bridgeport, Oct. Term, 1899.   ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The finding will not be corrected upon appeal where the alterations asked for embody disputed facts concerning which there is conflicting evidence; especially if it appears that only a portion of such evidence is before this court.

If no judgment is rendered in favor of an alleged misjoined coplaintiff, the ruling sustaining such joinder furnishes no ground for a new trial, even if erroneous, unless some harm to the defendant therefrom is disclosed by the record.

Whatever may be the law as to Connecticut residents, it is now settled that under the 14th Amendment of the Federal Constitution the judgment of a State Court of general jurisdiction may be impeached by a non-resident, in a collateral proceeding, upon proof that such court had in fact acquired no jurisdiction over him.

Several months after a foreclosure suit had terminated by the rendition of final judgment and the title to the property had become absolute

in the non-resident plaintiffs, their former attorney, without their knowledge or consent, and at a subsequent term of court, moved to have the foreclosure decree opened and the cause reinstated on the docket, and this motion was granted. Meanwhile the plaintiffs had insured the property as their own, and upon its destruction by fire sued the insurance company to recover the loss. *Held* that in such action the plaintiffs might support their foreclosure title by showing that the court had no jurisdiction over them when it attempted to annul its original decree and restore the cause to the docket.
The case of *Coit* v. *Haven*, 30 Conn. 190, overruled.
A member of the plaintiff firm having been appointed receiver of the company which originally owned the foreclosed property, by oversight and mistake inventoried it as still the property of that company and had prepared to sell and convey it, as such receiver, on the day it was burned. *Held* that these acts did not in themselves transfer title, nor estop the plaintiffs from controverting the change of ownership claimed by the defendant.

Argued Nov. 7th, 1899—decided Jan. 4th, 1900.

ACTION to recover the amount of a loss under a policy of fire insurance, brought to the District Court of Waterbury and thence by the defendant's appeal to the Superior Court in New Haven County, and tried to the court, *Roraback, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant for alleged errors in the rulings and findings of the court. *No error.*

The original plaintiffs were Porter Brothers & Co., a copartnership transacting business in the city of New York, and the Waterbury Savings Bank, a corporation located in Waterbury. While the action was pending in the District Court the Mattatuck Manufacturing Company, a corporation located in Waterbury, was, by order of the. court and with the consent of the parties, substituted as plaintiff in place of Porter Brothers & Co. After this the substituted plaintiff filed in the District Court an amended complaint, in which it adopted all the allegations of the original complaint, and further alleged that it was the *bona fide* owner by assignment from Porter Brothers & Co. of all their rights under the policy sued upon.

In the Superior Court the case was tried substantially upon the pleadings filed in the District Court, and among these was a demurrer to the complaint for misjoinder of parties

plaintiff, on the ground that they had no joint or common interest in the subject-matter of the suit, or in the judgment sought to be obtained. The Superior Court overruled this demurrer *pro forma.*

The finding and memorandum of decision, which is made by reference a part of the finding, states in substance the following facts : —

Porter Brothers & Co. were the owners of the majority of the stock of a corporation located in Waterbury known as Barnard Son and Company. The firm controlled the conduct of the affairs of the corporation, acted as its selling agent, and its officers and directors were either members of the firm, or were persons who were in effect appointed by the firm.

For many years prior to May, 1895, said corporation was the owner of certain land in Waterbury, with a factory and other buildings thereon and of the machinery and tools therein. Upon this real estate the Waterbury Savings Bank for many years has held a mortgage to secure a debt of $12,000. In May, 1895, said firm obtained a judgment against said corporation for upwards of $20,000, and at once placed the same as a judgment lien upon said land and buildings and upon the fixed machinery in said buildings. This lien was foreclosed by the firm, and on the 12th day of July, 1895, the property covered by it became the absolute property of the firm by failure of the corporation to redeem, and a certificate of title, as required by law in such cases, was filed. After this, on the 15th day of December, 1895, the firm procured the policy sued upon to be issued to them upon the property thus acquired.

This policy was procured by the firm in their own name, at their own expense, for their own benefit and as additional security to the mortgagee. The property was described in the policy as follows : —

"PORTER BROS. & CO.

" On their frame, main factory building, with all additions ; also all out-buildings on premises occupied by the assured chiefly for the manufacture of shears and other metallic

goods, situate about two miles easterly from Centre square in Waterbury, Conn., and on elevators, piping, plumbing, heating, and lighting apparatus, engines, boilers, pumps, and all connections and appurtenances thereto, fire protection appliances, machinery, shafting, belting, pulleys, tools, implements, dies, furniture and fixtures of all kinds, counters, shelving, safes, electrotypes, wood cuts and machinery supplies, and stock and merchandise of every description, manufactured, unmanufactured, and in process of manufacture, their own, or held by them in trust, or sold and not delivered, including boxes, labels, cards, and advertising and other materials and supplies for their business, while contained therein and thereto."

The court finds that this "omnibus clause . . . relating to the property insured and the facts in evidence, will. not warrant the finding that Porter Brothers & Co. attempted to or did in fact insure personal property belonging to Barnard Son & Company, or any other except their own;" and the policy did not cover, and was not intended by the insured to cover, any personal property save their own. The property insured was destroyed by fire on the 19th day of October, 1896, while the policy was in full force, and proofs of loss were duly filed, but no claim was made therein for loss except upon buildings and fixed machinery.

In March, 1896, Porter Brothers & Co., by their attorney D. F. Webster, applied for the appointment of a receiver of Barnard Son and Company, and Robinson, a member of said firm and also treasurer of said corporation, was appointed such receiver. Thereafter, in May, 1896, said receiver filed an inventory in said cause in which was included the property acquired by Porter Brothers & Co. by said foreclosure, and also personal property of said corporation. This inventory was prepared by the attorney and sent to the receiver in New York for signature, and his attention was not drawn particularly to this matter, and he signed and made oath to it without intending in any way to make claim to the property of the firm. No other member of the firm knew anything about the inventory. On October 10th, 1896, said receiver pro-

cured an order of court to sell the real estate described in the inventory. On the 19th day of that same month two deeds of said real estate, purporting to convey the interest of said firm and of said receiver therein, to one Judd, trustee, were delivered to Webster, the attorney aforesaid, in New York City, with instructions to deliver them to Judd on payment of the purchase price. Before this could be done the fire occurred and said deeds were never delivered.

Within a few days after this Webster died. He was the attorney who had acted for the firm in the foreclosure proceedings, and in procuring the judgment lien aforesaid, and for a long time prior to his death he had been assistant clerk of the District Court of Waterbury. Soon after his death it was found that Webster, on or about December 2d, 1895, had filed in said court the following paper, upon which such action was had by the court as appears below :—

"Porter Brothers & Company              District Court of Waterbury,
            *vs.*                          September Term, 1895.
"Barnard Son & Company.

"MOTION TO OPEN JUDGMENT.

"The plaintiffs in the above-entitled action pray that the judgment of foreclosure rendered in said action by said court by default on the 15th day of June, 1895, at the January term, 1895, be opened and set aside and the case restored to the docket of this court.

"Dated at Waterbury, this first day of December, 1895.
                              "THE PLAINTIFFS,
                                   "By D. F. Webster,
                                        "*their Attorney.*

"INDORSEMENTS.
"Motion to open judgment filed Dec. 2, 1895.
                              "LINFORD F. ROOT, *Clerk.*

"Motion granted, the former judgment being opened and set aside, and the case is ordered restored to the docket.
                              "BRADSTREET, *Judge.*"

On what day such action was had does not appear of rec-

ord. The only entry as to this point reads as follows: "Judgment opened by order of court December, 1895." Neither Porter Brothers & Co., nor the Waterbury Savings Bank, had any knowledge of this action of Webster, or of the court, until after Webster's death, nor any knowledge that Webster had intended to take any such action.

In December, 1896, said court, at the instance of the Waterbury Savings Bank, rescinded and set aside its former order reopening the judgment in foreclosure, and erased the case from the docket. In October, 1896, after the fire, the Mattatuck Manufacturing Company was organized, and in January, 1897, Porter Brothers & Co. and the receiver of Barnard Son and Company, conveyed by deed to the newly formed corporation such interest as the grantors had respectively in the foreclosed real estate; and at the same time said firm assigned to the new corporation all the firm's rights under the policy of insurance in question. After this the said Mattatuck Company, in consideration of forbearance by the Waterbury Savings Bank, assumed said mortgage debt, and also built upon the land mortgaged a modern factory building equal in value to the one destroyed by the fire.

Upon these facts the defendant claimed in substance as follows: (1) that the demurrer for misjoinder should have been sustained; (2) that the defendant should be subrogated to the rights of the bank under the mortgage; (3) that the policy was void because the interest of the insured was not truly stated therein, and because a change in the title and interest of the insured had taken place after its issue; (4) that Porter Brothers & Co. were estopped from denying that such change took place; (5) and that the Mattatuck Company took nothing under the policy by its assignment, because the policy was void in the hands of its assignors. The court rendered judgment for the plaintiffs, other than the Waterbury Savings Bank.

The defendants filed a motion to correct the finding in certain respects, which the court denied.

Upon this part of the case evidence is certified up which the court states is "a part only of the evidence given upon

said trial touching the several facts to which this evidence is applicable."

The reasons of appeal relate to the alleged errors of the court in overruling these claims of the defendant, and in refusing to correct the finding as requested.

*William Waldo Hyde* and *Arthur L. Shipman*, for the appellant (defendant).

*Henry Stoddard* and *Lucien F. Burpee*, for the appellees (plaintiffs).

TORRANCE, J. The reasons of appeal based upon the alleged errors of the court in refusing to correct the finding, may be laid out of the case; for not only are the facts objected to, which the court has found and those which it refused to find, disputed facts about which there was conflicting evidence, but the record clearly shows that only a part of the evidence touching these several facts is before this court. Under such circumstances this court will not review the action of the trial court in refusing to correct the record, and the finding as made must stand. *Hartford Bldg. & Loan Asso.* v. *Goldreyer*, 71 Conn. 95, 98; *Waterbury Clock Co.* v. *Irion*, ibid. 254.

The remaining reasons of appeal are, in the defendant's brief, divided into three classes, which relate (1) to the ruling upon the demurrer; (2) to the ruling in respect to the effect of the action of the District Court in December, 1895; (3) to the rulings upon the claim that the plaintiffs were estopped to deny violations of the conditions of the policy of insurance. These it will be convenient to consider in the order stated.

The complaint was brought in the name of the insured and the mortgagee. The policy contained a provision to the effect that the loss if any should be payable to the mortgagee " as interest may appear," and further, that the interest of the mortgagee should not be invalidated by any act or neglect of the mortgagor, or owner, nor by certain other enumerated acts or events, provided the mortgagee did certain things. Under this clause the defendant claimed that the Savings

Bank was not properly joined as plaintiff, and demurred to the complaint on that ground. The court held otherwise.

Whether this ruling was right or wrong we have no occasion to consider in this case; for no judgment was rendered in favor of the Savings Bank, and the record does not disclose that the defendant was harmed by the ruling. Under such circumstances, even if the ruling was wrong, a new trial will not be granted. *Carroll* v. *Weaver*, 65 Conn. 76, 84.

The defendant contends that the judgment of foreclosure which became absolute in July, 1895, was reopened in December, 1895, and that the effect of this was to place the ownership of the foreclosed property just as it was prior to the judgment of foreclosure; and if the order in question was a valid one as against the plaintiffs, or, what is substantially the same thing, if its invalidity cannot be shown in this proceeding, the claimed effect would undoubtedly follow. The policy took effect on the 15th day of December, 1895, and the order in question was made in the same month, but the precise day on which it was made does not appear. The claim of the defendant on this point is this: If the order was made prior to December 15th, then the interest of the insured in the property insured was not truly stated in the policy, and the policy is for that reason void; and if the order was made after December 15th, then a change of interest after the issue of the policy took place which avoided the policy.

Under the provisions of the policy sued upon, these claims of the defendant are entitled to serious consideration, provided the order reopening the judgment of foreclosure was a valid order, and whether it was so is one of the important questions in the case.

It clearly appears from the record that the jurisdiction of the District Court over the parties in the foreclosure proceeding, and over the subject-matter of that proceeding, had ended long before December, 1895. Months before, at a prior term of the court, the subject-matter of that proceeding had been disposed of by a final judgment, the ownership of the property had been changed, the case had ended, and all the parties to it were out of court. Under these circum-

stances, unless the District Court in some proper way again acquired jurisdiction over the parties and the cause, its order reopening the judgment of foreclosure was void; and this the defendant concedes, but contends that the record of this action of the District Court is the record of a court of general jurisdiction, and that in this action the plaintiffs cannot show by evidence outside of that record that the court had no jurisdiction of the parties; in short that the rule applied in *Coit* v. *Haven*, 30 Conn. 190, applies here.

The court below has found, upon extrinsic evidence which was not objected to and the sufficiency of which cannot be questioned here, that the District Court, when it passed the order in question, had no jurisdiction over Porter Brothers and Company, whom its order materially affected; that in truth and in fact its order as to them was utterly void. The defendant sets up that order in this case against those parties, in bar of their right to recover under the policy sued upon. If the invalidity of the order cannot be shown, it is or may be a bar to the action. One of the parties affected by it shows, by evidence offered and received without objection, that it is utterly void. Is that defense available to that party in this action? We think it is.

Porter Brothers & Co. are now, and were when the order was made, non-residents of this State. Assuming, now, for the purposes of the argument, that the informal, incomplete and meager record in question is to be treated as the complete and formal record of a court of general jurisdiction, as claimed by the defendant, the question is whether a non-resident over whom the court acquired no jurisdiction can show that fact, to impeach it, in a collateral proceeding.

In *Coit* v. *Haven*, *supra*, this question was, we think, answered in the negative. Two constitutional provisions have been brought to our attention as affecting the point now under consideration, one of which did not exist when *Coit* v. *Haven* was decided, and the other was not adverted to in the opinion of the court in that case. The latter is that with reference to due course of law, contained in Art. 1 of the Constitution of this State, which in § 9 declares that in crim-

inal prosecutions the accused shall not be deprived of life, liberty, or property, but by due course of law; and in § 12, that all courts shall be open, and every person, for any injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial or delay. See *Bostwick* v. *Isbell*, 41 Conn. 305, 307.

The former first came into effect in 1868 as part of the 14th Amendment to the Federal Constitution, §1 of which forbids a State to deprive any person of life, liberty, or property, without due process of law. It is now contended that to hold the record of the District Court sufficient to show that the foreclosure decree passed by that court in June, 1895, was vacated, and that the absolute title acquired under it by Porter Brothers & Co. was thus divested, would be to deprive them of property without due course or process of law, if in fact they had no opportunity to be heard in that court upon the question of reopening the judgment of foreclosure.

They are not, and were not when the vacating order was passed, residents of this State, but were citizens of another State. Whatever may be the law with respect to those amenable to our laws of judicial procedure, as respects non-residents it is settled by repeated decisions of the Supreme Court of the United States that by virtue of the 14th Amendment they can impeach, in collateral proceedings, the judgments of a State court purporting to divest them of property, by showing that such judgments were rendered without due notice to them and without personal appearance by them, although upon the face of the record it may appear that such notice was given or that they voluntarily appeared. See the case of *Pennoyer* v. *Neff*, 95 U. S. 714, and the numerous cases in the United States Supreme Court Reports to the same effect.

This also appears to be the view of this matter taken by the Supreme Court of Massachusetts in *Needham* v. *Thayer*, 147 Mass. 536. In that case the court (p. 537) said: " The recent cases in the Supreme Court of the United States go upon the ground that a judgment *in personam* against a per-

son who is not a resident of the State, who has not been personally served with process, and who has not appeared, is wholly void, and that no suit can be maintained on it, either in the same or in any other court. . . . The court has no jurisdiction, and its judgment has no force, either in the State in which it was rendered, or in any other State. This being so, the judgment cannot be enforced by suit upon it, and the non-resident defendant cannot be deprived of his right to show by plea and proof, if such suit is brought, that the judgment is void, without an abridgement of his privileges and immunities, to protect which was the object of the fourteenth article of amendment. To compel him to resort to our courts by a writ of error, in which he must file a bond if he would obtain a stay of execution, is to impose a burden upon him, and thus to abridge his privileges and immunities. It has been held, in many cases, that a domestic judgment cannot be impeached by plea and proof in a suit brought upon it, because the proper remedy is a writ of error. *Hendrick* v. *Whittemore*, 105 Mass. 23, and cases cited. But while a State may make laws binding its own citizens, requiring them to resort to a writ of error, it cannot so bind citizens of other States."

In the conclusion reached in that case we concur, and from this it follows that the order in question here, as against Porter Brothers & Co. and those claiming under them, is void and of no effect. That being so, it also follows that the allegations in the answer founded upon the assumed validity of that order, as to untrue statements of title and interest in the policy, and as to change in title or interest after the issue of the policy and before the loss, are not true, and that the plaintiffs are not estopped to deny these allegations.

The defendant, however, further contends that the plaintiffs are estopped to deny the allegations aforesaid by reason of what the receiver of Barnard Son and Company did with the the real estate and fixed machinery insured, and what Porter Brothers & Co. did with it, prior to or about the time of the loss.

The receiver was a member of the firm of Porter Brothers &

Co., and he inventoried the property as the property of Barnard Son and Company. He afterwards obtained an order to sell it and agreed to sell it to Judd, trustee. Afterwards he and Porter Brothers & Co. prepared deeds of it and on the very day of the fire directed their attorney to deliver these deeds to Judd on payment of the price.

But these acts, and others of a similar nature detailed in the finding, did not effect any change of title or interest in the property insured, and consequently they did not make the policy void.

Nor do any or all of these acts together estop the plaintiffs from denying that any such change took place. It is not shown that the defendant had any knowledge of these acts, nor that it acted upon them, nor that any loss or harm resulted to it from them. None of the elements of an estoppel appear upon the record. *Chase's Appeal*, 57 Conn. 236, and cases cited therein.

In this view of the matter the question, made by the defendant, as to whether the knowledge of the receiver as to his acts was the knowledge of the firm of which he was a member, is of no consequence. Even if the firm had such knowledge, that would not under the circumstances, either alone or in connection with the other facts found, create an estoppel.

The defendant further contends (1) that the title to the personal property covered by the policy was not truly stated therein; (2) that a change of such title took place after the policy issued and before the loss by a sale.

These claims are not supported by the record. The finding is to the effect that no personal property was covered by the policy save that owned by Porter Brothers & Co. and that no sale of such property took place prior to the fire. That finding is conclusive, upon the record as it stands, against the defendant's contention.

In the view we have taken of this case it is unnecessary to consider any of the other questions discussed in the defendant's brief.

There is no error.

In this opinion the other judges concurred.