## REINER, REINER AND BENDETT, P.C. *v.* THE CADLE COMPANY ET AL.
## (SC 17378)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued October 24, 2005—officially released May 9, 2006

*Paul M. Gaide*, for the appellant (named defendant).

*David F. Borrino*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Reiner, Reiner and Bendett, P.C., a law firm, rendered legal services to the named defendant, The Cadle Company (defendant), an Ohio corporation, for which the plaintiff allegedly was not paid. This joint appeal arises out of two actions brought by the plaintiff seeking payment for those services. In both actions, the plaintiff obtained default judgments against the defendant. In the first action, brought in 2000, the plaintiff sought and obtained judgment for the amount of the unpaid fees (collection action). The plaintiff thereafter filed a judgment lien against real property in Connecticut owned by the defendant. The plaintiff then brought the second action in 2004, to foreclose the judgment lien (foreclosure action), and obtained a judgment of foreclosure by sale.[1]

---

[1] Two additional defendants in the foreclosure action, Sky Bank and FirstMerit Bank, N.A., both mortgagees, are not parties to this appeal. In this opinion, references to the defendant are to The Cadle Company only.

In this joint appeal,[2] the defendant challenges the default judgment in the collection action, claiming that the trial court lacked personal jurisdiction over the defendant in that action.[3] The defendant also challenges the default judgment in the foreclosure action, contending that the trial court in the foreclosure action improperly failed to observe the statutory continuance for a nonresident, nonappearing defendant as mandated by General Statutes § 52-87 (b)[4] and Practice Book § 9-

[2] The defendant filed a joint appeal to the Appellate Court from the judgment in the collection action and from the trial court's denial of its motion to open the judgment of foreclosure. The Appellate Court granted in part the plaintiff's motion to dismiss the appeal from the collection action, and we transferred the joint appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Although the defendant also attacked the judgment in the collection action on other grounds, the Appellate Court granted the plaintiff's motion to dismiss those portions of the appeal, permitting the defendant to challenge the collection action only with regard to its claim that the trial court lacked personal jurisdiction over the defendant in that action. We also decline to consider the defendant's other attacks on that judgment contained in its reply brief. See *Grimm* v. *Grimm*, 276 Conn. 377, 393–94 n.19, 886 A.2d 391 (2005) (claims unreviewable when raised for first time in reply brief).

[4] General Statutes § 52-87 provides in relevant part: "(b) If the defendant is not an inhabitant or a resident of this state at the commencement of the action and does not appear therein, the court shall continue or postpone it for three months and may, if it deems further notice advisable, direct such further notice of the pendency of the action to be given to the defendant by publication in some newspaper, or otherwise, as it deems expedient, or may authorize any person empowered to serve process by the laws of the foreign jurisdiction in which the defendant resides to serve upon the defendant a copy of the summons and complaint and of the order of notice. Any such person serving process in a foreign jurisdiction shall make affidavit of his actions concerning the process on the original order of notice. If, upon the expiration of such three months, the defendant does not then appear and no special reason is shown for further delay, judgment may be rendered against the defendant by default. Upon the expiration of the three-month continuance, it shall be presumed prima facie that no special reason for further delay exists. In actions of foreclosure, including prayers for relief incident thereto and part thereof, judgment may then be rendered upon the plaintiff's motion for judgment of foreclosure. . . .

"(d) A continuance or postponement under this section shall not be granted or, if granted, shall terminate if actual notice is shown in accordance with section 52-88. . . ."

$1,^{5}$ and improperly failed to open the judgment on that ground. We reject both of these claims and affirm the trial court's judgments.

The record reveals the following undisputed procedural history and facts that are relevant to our disposition of this appeal. On March 31, 2000, the plaintiff filed the collection action, alleging that the defendant had obtained the plaintiff's legal services pursuant to a written "Retainer Agreement" and that the defendant had failed to pay for those services as required by the agreement. The complaint was served on the defendant by certified mail pursuant to the corporate long arm statute, General Statutes § 33-929.[6] After the defendant

[5] Practice Book § 9-1 provides in relevant part: "If the defendant is not an inhabitant or resident of this state at the commencement of the action and does not appear therein, the judicial authority shall continue or postpone it for a period of three months and may, if it deems further notice advisable, direct such further notice of the action to be given to the defendant by publication in some newspaper, or otherwise, as it deems expedient, or may authorize any person empowered to serve process by the laws of the foreign jurisdiction in which such defendant resides to serve upon such defendant a copy of the summons and complaint and of the order of notice and such person shall make affidavit of his or her doings thereon on the original order or notice. If, upon the expiration of such three months, the defendant does not then appear and no special reason is shown for further delay, judgment may be rendered against such defendant by default. Upon the expiration of any such continuance, it shall be presumed prima facie that no special reason for further delay exists. In actions of foreclosure, including prayers for relief incident thereto and part thereof, judgment may then be rendered upon the plaintiff's motion for judgment of foreclosure. The provisions of this section shall not apply in the case of any civil action brought under and pursuant to General Statutes § 47-33 or § 52-69 and no continuance or postponement of any such action or additional notice of the pendency thereof shall be required unless the judicial authority so orders. (See General Statutes § 52-87 and annotations.)"

[6] General Statutes § 33-929 provides in relevant part: "(b) A foreign corporation may be served by any proper officer or other person lawfully empowered to make service by registered or certified mail, return receipt requested, addressed to the secretary of the foreign corporation at its principal office shown in its application for a certificate of authority or in its most recent annual report if the foreign corporation: (1) Has no registered agent or its registered agent cannot with reasonable diligence be served; (2) has withdrawn from transacting business in this state under section 33-932; or

had failed to appear, the plaintiff filed a motion for judgment by default. On July 16, 2001, the trial court, *Berger, J.,* rendered a default judgment for the plaintiff, awarding damages of $40,512.67 plus costs.

The plaintiff thereafter recorded a judgment lien against certain Connecticut property owned by the defendant, and, on January 29, 2004, brought the foreclosure action. The plaintiff again served the complaint by certified mail pursuant to the corporate long arm statute, § 33-929. See footnote 6 of this opinion. On March 8, 2004, after the defendant again had failed to appear, *Hon. Robert Satter,* judge trial referee, granted the plaintiff's motions for default and for judgment of foreclosure by sale.

Within three weeks after the foreclosure judgment was entered, the defendant filed a motion to open the default and the judgment claiming, in part, that the

(3) has had its certificate of authority revoked under section 33-936. . . .

"(d) Service is effective under subsection (b) of this section at the earliest of: (1) The date the foreign corporation receives the mail; (2) the date shown on the return receipt, if signed on behalf of the foreign corporation; and (3) five days after its deposit in the United States mail, as evidenced by the postmark, if mailed postage prepaid and correctly addressed. . . .

"(f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state . . . .

"(g) In any action brought under subsection (e) or (f) of this section, or in any foreclosure or other action involving real property located in this state in which a foreign corporation, although not transacting business in this state, owns or claims to own an interest, service of process on such corporation may be made as provided in subsection (b) of this section, except that the service shall be addressed to the corporation at its principal office or, if it has no such office or the address of such office is not known, to such corporation's last office as shown in the official registry of the state or country of its incorporation, which address shall be set forth in the writ or other process.

"(h) This section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation."

judgment was void because the trial court had failed to order the mandated continuance pursuant to § 52-87 (b). The defendant also contended that the trial court had lacked personal jurisdiction over it in the collection action, rendering the judgment in that action void as well. This claim was based on a forum selection clause in the retainer agreement, which vested Ohio courts with exclusive jurisdiction over disputes arising under the agreement. After a hearing on the motion to open, *Hon. Samuel Freed*, judge trial referee, issued a memorandum of decision denying the motion. The trial court first found that the defendant had received actual notice of the foreclosure action, which obviated the need to observe the statutory continuance. The trial court further concluded that the forum selection clause did not deprive the court of personal jurisdiction of the defendant in the collection action. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court improperly concluded that the forum selection clause in the retainer agreement did not deprive the trial court of personal jurisdiction over the defendant in the collection action. The defendant contends that the forum selection clause, which required litigation arising from the contract to be resolved in Ohio courts, deprived the trial court of the power to exercise personal jurisdiction over the defendant. Because of this lack of personal jurisdiction, the defendant argues, the judgment against the defendant in the collection action was void and, accordingly, the judgment in the foreclosure action should have been vacated because it was premised on the validity of the judgment in the collection action.

The plaintiff responds that, although forum selection clauses may be enforceable generally, a specific clause will not deprive a court of jurisdiction unless one of the parties actually seeks to enforce it and the trial

court determines, based on several factors, that the clause should be enforced. Because the defendant failed to appear in the collection action and seek enforcement of the clause, the plaintiff argues, the clause did not deprive the court of personal jurisdiction of the defendant.[7] We agree with the plaintiff.

---

[7] The plaintiff also argues that the defendant's attempt to challenge the collection action through the foreclosure action is an improper collateral attack. The parties agree that the defendant's challenge to the judgment in the collection action constitutes a collateral attack. The defendant brings the challenge by way of a motion to open the judgment in the foreclosure action, rather than in the collection action itself, and does so nearly three years after the date of the judgment in the collection action, well beyond the four months within which a judgment may be opened. See General Statutes §§ 52-212 and 52-212a. Although "[w]e have strongly disfavored collateral attacks upon judgments because such belated litigation undermines the important principle of finality"; *Meinket* v. *Levinson*, 193 Conn. 110, 113, 474 A.2d 454 (1984); we also have recognized the widely accepted rule that a default judgment that is rendered without jurisdiction over the defendant may be attacked collaterally. "As a matter of law, in the absence of jurisdiction over the parties, a judgment is void ab initio and is subject to both direct and collateral attack." (Internal quotation marks omitted.) *Wilkinson* v. *Boats Unlimited, Inc.*, 236 Conn. 78, 84, 670 A.2d 1296 (1996); see 2 Restatement (Second), Judgments § 65 (1982); 1 A. Freeman, Judgments (5th Ed. 1925) § 305, pp. 602–603.

The plaintiff specifically argues that the defendant may not attack collaterally the judgment in the collection action because the alleged defect in the judgment is not apparent from the record. The plaintiff relies on *Jensen* v. *Nationwide Mutual Ins. Co.*, 158 Conn. 251, 260, 259 A.2d 598 (1969), in which this court stated that "[u]nless the invalidity of a judgment appears on the face of the record, the judgment is not vulnerable to collateral attack." Although we generally require that collateral attacks be supported by facts apparent from the record, we have eschewed the application of that rule when a nonresident defendant collaterally challenges the personal jurisdiction of the court rendering judgment. As this court recognized in *Porter* v. *Orient Ins. Co.*, 72 Conn. 519, 528, 45 A. 7 (1900), the United States Supreme Court long has held that the fourteenth amendment to the United States constitution grants to nonresident defendants the right to "impeach, in collateral proceedings, the judgments of a [s]tate court purporting to divest them of property, by showing that such judgments were rendered without due notice to them and without personal appearance by them, although upon the face of the record it may appear that such notice was given or that they voluntarily appeared." As in *Porter*, the defendant in the present case, also a nonresident defendant, has the right to challenge collaterally the trial court's personal jurisdiction in the collection action, despite the

The following additional facts are necessary to the resolution of this issue. In an affidavit dated March 25, 2004, which the defendant filed with its motion to open the judgment in the foreclosure action, Peter T. Barta, an assistant vice president of the defendant, alleges that the contract claim upon which the judgment in the collection action was based was subject to the terms set forth in a memorandum that is attached to the affidavit. The memorandum, which is entitled "Terms of Representation" and is dated November 2, 1994, is from the general counsel for the defendant and is addressed to "All Retained Counsel." The memorandum's eleventh numbered paragraph provides that "[a]ll disputes as to any amounts charged or services rendered, or as to these Terms of Representation shall be resolved in the Newton Falls, Ohio Municipal Court or the Trumbull County, Ohio Common Pleas Court, depending on the amount in controversy, and shall be resolved pursuant to the laws of the State of Ohio." The plaintiff has not disputed the defendant's claim that the plaintiff's representation of the defendant was subject to the terms set forth in the memorandum.

We begin with the applicable standard of review. The question before the trial court, i.e., whether, in a contract action, a forum selection clause will divest a court not designated in the clause of personal jurisdiction over a defendant that had not sought to enforce the clause in that action, is a question of law, over which our review is plenary. See *McBurney* v. *Cirillo*, 276 Conn. 782, 799, 889 A.2d 759 (2006).

Historically, courts viewed forum selection clauses as improper attempts by the parties to oust jurisdiction from a court that otherwise had the authority to hear

fact that the basis for that challenge is not apparent on the face of the record in that action. See also 2 Restatement (Second), supra, § 65; 1 A. Freeman, supra, § 305, pp. 602–603.

an action. Annot., 31 A.L.R.4th 404, 409 (1984). Courts refused to enforce, as contrary to public policy, forum selection clauses that attempted to vest exclusive jurisdiction in a specific forum over controversies that would arise in the future. Id. Indeed, this court previously adopted that reasoning and concluded that a forum selection clause in an insurance policy making Haiti the exclusive forum for all questions arising from the policy was illegal and against public policy. *Parker, Peebles & Knox* v. *El Saieh*, 107 Conn. 545, 557–59, 141 A. 884 (1928). Quoting from a decision of the Massachusetts Supreme Judicial Court, this court embraced the notion that, just as "parties cannot, by their consent, give jurisdiction to courts, where the law has not given it . . . it seems to follow from the same course of reasoning, that parties cannot take away jurisdiction, where the law has given it." (Internal quotation marks omitted.) Id., 557, quoting *Hall* v. *People's Mutual Fire Ins. Co.*, 72 Mass. (6 Gray) 185, 192 (1856) (Shaw, C. J.).

In more recent years, however, courts have concluded that forum selection clauses do not oust courts of their jurisdiction, but they have been willing to enforce such contract clauses as long as they were reasonable by declining to exercise jurisdiction over an action in certain circumstances. Annot., 31 A.L.R.4th 415 (1984); 1 Restatement (Second), Conflict of Laws § 80 (1971). The United States Supreme Court took the lead on this issue in *Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), in which the court rejected the traditional view that forum selection clauses are unenforceable as contrary to public policy. The court stated that "[t]he argument that such clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction. . . . No one seriously contends in this case that the forum-selection clause 'ousted' the District Court of jurisdiction over [the defendant's] action. The

threshold question is whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." Id., 12.[8]

Moreover, the claim that a forum selection clause will strip a court of its jurisdiction over the parties, while not yet expressly considered by this court,[9] has been solidly rejected by the great weight of courts and authorities considering the question after the Supreme Court's decision in *Bremen*. See, e.g., *Lambert* v. *Kysar*, 983 F.2d 1110, 1118 n.11 (1st Cir. 1993) ("It is well established that a forum selection clause does not *divest* a court of jurisdiction or proper venue over a contractual dispute. Rather, a court addressing the enforceability of a forum selection clause is to consider whether it must, *in its discretion, decline* jurisdiction and defer to the selected forum." [Emphasis in original.]); *Manrique* v. *Fabbri*, 493 So. 2d 437, 439–40 (Fla. 1986) ("Forum selection clauses . . . do not oust courts of their jurisdiction. They merely present the court with a legitimate reason to refrain from exercising

[8] The *Bremen* court held that the correct approach for federal courts sitting in admiralty is that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen* v. *Zapata Off-Shore Co.*, supra, 407 U.S. 10. The court then enumerated several factors that could result in a clause being held unenforceable, including fraud or overreaching in the contract negotiations, serious inconvenience from litigating in the selected forum, or the contravention of a strong public policy in the forum in which suit is brought if the clause is enforced. Id., 15–17.

[9] This court has recognized the enforceability of forum selection clauses in *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 41–43, 495 A.2d 1034 (1985), in which the court rejected the nonresident defendants' argument that their due process rights would be violated if suit in Connecticut were permitted based on a forum selection clause designating Connecticut as the forum for litigation arising from a trust. In *Bohart*, the court embraced the rule concerning the enforceability of such clauses set forth in *Bremen* and its progeny, stating that "[a]bsent a showing of fraud or overreaching, such forum clauses will be enforced by the courts." Id., 42.

that jurisdiction." [Internal quotation marks omitted.]); *Smith, Valentino & Smith, Inc.* v. *Superior Court*, 17 Cal. 3d 491, 495, 551 P.2d 1206, 131 Cal. Rptr. 374 (1976) ("[w]hile it is true that the parties may not *deprive* courts of their jurisdiction over causes by private agreement . . . it is readily apparent that courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum" [citation omitted; emphasis in original]); 1 Restatement (Second), supra, § 80.

In the present case, the defendant fails to offer any legal authority in support of its contention that the Ohio forum selection clause agreed to by the parties deprived the trial court of personal jurisdiction over the defendant. We are persuaded by the reasoning of the United States Supreme Court in *Bremen*, and conclude that the Ohio forum selection clause did not divest the trial court of personal jurisdiction over the defendant. The existence of such a clause does not deprive the trial court of personal jurisdiction over the parties, but presents the question whether it is reasonable for the court to exercise its jurisdiction in the particular circumstances of the case. See *Bremen* v. *Zapata Off-Shore Co.*, supra, 407 U.S. 12. Accordingly, we reject the defendant's argument that the forum selection clause in the retainer agreement divested the trial court of its personal jurisdiction over the defendant in the collection action.[10]

---

[10] The defendant also alleges that the trial court was not aware of its obligation to consider the enforceability of the clause because the plaintiff fraudulently failed to submit to the court the "Terms of Representation" memorandum, which contained the forum selection clause. The defendant offers no evidence or finding of fact by the trial court, however, concerning this allegation of fraud. See Practice Book § 61-10 (appellant bears burden of providing adequate record for review). Moreover, if the defendant wished to receive the benefit of the forum selection clause, it was obligated to seek enforcement of the clause in a timely manner. It is well established that a party that fails to seek enforcement of a contract clause may lose the benefit of that contractual provision. See *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, 272 Conn. 617, 623, 866 A.2d 582 (2005) (contract rights may

## II

The defendant's second claim is that the trial court abused its discretion when it declined to open the judgment in the foreclosure action on the basis of the defendant's claim that the court had failed to order the statutory continuance required by § 52-87 (b)[11] for nonresident, nonappearing defendants. Specifically, the defendant argues that the plaintiff failed to present the trial court with sufficient evidence that the defendant had received actual notice of the action, which, under the statute, would have permitted the trial court to proceed without observing the statutory continuance. See General Statutes § 52-87 (d).[12] Further, the defendant argues, Judge Freed, in ruling on the motion to open, improperly concluded that Judge Satter had found that the defendant received actual notice of the foreclosure action. The defendant argues that the motion to open should have been granted because no valid action could be taken by the trial court during the

be waived); *Lanna* v. *Greene*, 175 Conn. 453, 458, 399 A.2d 837 (1978) (same).

The defendant also argues that the exercise of jurisdiction over it in the collection action despite the existence of the forum selection clause violated its constitutional due process rights because it did not have a reasonable anticipation of being sued in Connecticut. Once again, this claim does not implicate the trial court's personal jurisdiction, only the propriety of its exercise of that jurisdiction, and the defendant's authority to challenge the collection action in this appeal is limited to claims of lack of personal jurisdiction. See footnote 3 of this opinion. Moreover, we note that the defendant failed to raise this claim before the trial court in the foreclosure action and did not seek in this court to prevail on the claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5.

Finally, although the defendant's brief refers to the lack of "appropriate service" and "[a]n improperly executed writ," the brief read in its entirety makes clear that the defendant's claim is solely that the forum selection clause rendered the trial court's exercise of jurisdiction over it improper. At no point does the defendant allege insufficient service of process in the collection action. Moreover, the defendant acknowledges in its brief that it did, in fact, receive the writ and complaint in that action.

[11] See footnote 4 of this opinion.

[12] See footnote 4 of this opinion.

period in which the statutory continuance should have been in effect and, thus, the judgment rendered during this period was without legal effect.

The plaintiff responds that sufficient evidence was presented to establish that the defendant had received actual notice of the foreclosure action. The plaintiff further claims that the defendant has failed to provide an adequate record for review because it did not seek an articulation with regard to Judge Freed's basis for concluding that the defendant had received actual notice of the foreclosure action. Finally, the plaintiff argues that the defendant failed to satisfy the prerequisites to opening a judgment as set forth in General Statutes § 52-212 (a)[13] and Practice Book § 17-43 (a),[14] which require a showing of reasonable cause or that

[13] General Statutes § 52-212 (a) provides: "Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

[14] Practice Book § 17-43 (a) provides: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which notice was sent, and the case reinstated on the docket on such terms in respect to costs as the judicial authority deems reasonable, upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. Such written motion shall be verified by the oath of the complainant or the complainant's attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or the defendant failed to appear. The judicial authority shall order reasonable notice of the pendency of such written motion to be given to the adverse party, and may enjoin that party against enforcing such judgment or decree until the decision upon such written motion."

the movant possessed a good defense that it was prevented by mistake, accident or other good cause from asserting. We agree with the plaintiff that the evidence was sufficient for Judge Freed to have concluded that the defendant had received actual notice of the action and that he properly denied the motion to open the judgment on that basis.

The following additional facts are relevant to the resolution of this appeal. On March 8, 2004, the plaintiff appeared before Judge Satter in support of his motion for default for failure to appear and his motion for judgment of foreclosure by sale. During the hearing, the plaintiff offered to submit to the court for its inspection a supplemental marshal's return attached to which was the signed green return receipt card from the post office. The return and the signed card together indicated that service of the complaint had been made on the defendant at its address in Ohio by certified mail addressed to the care of the "Secretary" and that "B. Puleo" had signed for delivery of the documents on January 29, 2004. Judge Satter then made a finding concerning the debt and ordered the entry of judgment of foreclosure by sale. At the end of the hearing, the plaintiff asked the trial court to return to it the supplemental return documents, "unless the court needs them for its file." Judge Satter replied, "No, I don't need them. I thought I gave them—here they are."

Thereafter, on March 26, 2004, the defendant filed its motion to open the default and the judgment. The defendant also filed a supplemental brief in support of its motion to open, to which it attached a second affidavit of Barta, the defendant's assistant vice president, dated May 27, 2004. In that affidavit, Barta admitted that the defendant had received a copy of the plaintiff's motion for default in the foreclosure action on or about February 19, 2004.

We begin with the standard of review for the denial of a motion to open. "The principles that govern motions to open or set aside a civil judgment are well established. A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 271 Conn. 127, 144, 855 A.2d 964 (2004).

We note also the standard of review for issues of fact because the defendant's claims on appeal involve, in part, a challenge to factual determinations made by the trial court. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Citation omitted; internal quotation marks omitted.) *McBurney* v. *Cirillo*, supra, 276 Conn. 815–16; see Practice Book § 60-5.

The continuance statute, § 52-87 (b), provides that, in a civil action in which a nonresident defendant fails to appear, "the court shall continue or postpone [the action] for three months" in order to allow an opportunity for further efforts to notify the defendant of the action. The statute also provides that "[a] continuance or postponement under this section shall *not* be granted

or, if granted, shall terminate *if actual notice is shown* in accordance with [General Statutes §] 52-88." (Emphasis added.) General Statutes § 52-87 (d). Section 52-88 provides that "[a] continuance, postponement or adjournment, prescribed in section 52-87 or this section, shall not be granted or, if granted, shall terminate whenever the court finds that the absent or nonresident defendant, or his authorized agent or attorney, has received actual notice of the pendency of the case at least twelve days prior to such finding . . . ." See also Practice Book § 9-2.

We must decide whether Judge Freed's finding that the defendant received actual notice of the pendency of the foreclosure action is clearly erroneous. His decision to deny the defendant's motion to open was based upon that finding and, in addition, his conclusion that Judge Satter, who entered the default and rendered the foreclosure judgment, also implicitly had found such actual notice.[15] The defendant argues that Judge Freed

---

[15] The defendant challenges both Judge Freed's finding of actual notice and his finding that Judge Satter had found actual notice before rendering the foreclosure judgment. Our conclusion that the denial of the motion to open was not an abuse of discretion is based primarily on our determination that the court's finding of actual notice was not clearly erroneous and, thus, we need not analyze in-depth the defendant's claim that the record does not support the trial court's finding that the prior court had made a finding of actual notice. We note, however, that the record does not support the defendant's claims. The transcript of the hearing establishes that the court handed the supplemental return with the signed return receipt back to the plaintiff's attorney at the end of the hearing and, thus, that the document was in the possession of the court during the hearing. Moreover, "we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly . . . . The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty." (Citations omitted; internal quotation marks omitted.) *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988). Judge Freed properly concluded that Judge Satter, after having examined the signed return receipt card, proceeded to enter a default and render judgment without observing the statutory continuance because he had found implicitly, based on this evidence, that the defendant had received actual notice.

improperly based his finding of actual notice upon the signed return receipt card. The defendant contends that the plaintiff bore the burden of proving all facts necessary to establish the trial court's jurisdiction, including the fact of actual notice. Thus, the defendant argues, the plaintiff was required to present extrinsic evidence of the identity of the person who had signed the return receipt card and that, without such evidence, the plaintiff failed to carry its burden of proving actual notice. In support of this position, the defendant cites to a trial court decision, *Walker* v. *Syms*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 98 0581210 (June 22, 1999) (*Mulcahy, J.*), in which the court relied upon a decision of this court, *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 459 A.2d 503 (1983), in requiring such extrinsic evidence.

In *Jowdy*, this court considered whether the trial court properly dismissed an action because of the plaintiff's failure to prove that the defendant had minimum contacts with Connecticut for purposes of satisfying due process, stating that "[w]hen a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Id., 54. This court further quoted approvingly a declaration in Professor Edward L. Stephenson's treatise on Connecticut Civil Procedure[16] that "[w]hen jurisdiction is based on constructive service, jurisdiction cannot arise solely from the acts recited in the return. There should be no presumption of the truth of the plaintiff's allegation of the additional facts necessary to confer jurisdiction."

[16] The latest revision of Stephenson's treatise similarly provides: "[W]here constructive service is resorted to, jurisdiction can be established only on a showing of facts which do not appear in the return and hence the return alone cannot raise a presumption of jurisdiction." 1 E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 14, p. 26.

(Internal quotation marks omitted.) Id., 53, quoting 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 96, p. 390.

A close reading of *Jowdy* and the treatise indicates that, in both, the jurisdictional facts at issue were the facts necessary to establish that the defendant possessed minimum contacts with the state to justify the court's exercise of jurisdiction consistent with due process requirements. *Standard Tallow Corp.* v. *Jowdy,* supra, 190 Conn. 51–54; 1 E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 14, pp. 25–26; see also *Knipple* v. *Viking Communications, Ltd.,* 236 Conn. 602, 607, 674 A.2d 426 (1996) (considering whether defendant's contacts with state justified exercise of jurisdiction and reiterating rule that, in cases involving constructive service, plaintiff is required to bear burden of proving jurisdiction).

These authorities rely upon the fact that when service is made constructively, the nature of the defendant's relationship to the forum generally cannot be discerned from the marshal's return and accompanying documentation. When the marshal makes abode or personal service in this state, the return indicates that the defendant either lives in the state or at least was present in it when service was made. When the defendant is not a resident of this state and is not present in this state for service, proof that exercise of jurisdiction over the defendant satisfies due process requires evidence beyond the marshal's assertion that process was mailed and received.

Thus, the extent of the defendant's contacts with this state for purposes of due process, when challenged, must be proved with evidence extrinsic to the return. Proof that the defendant received actual notice of suit, however, does not require such extrinsic evidence. Whether the defendant received actual notice is a ques-

tion more akin to the question whether service was made properly than the question whether a defendant's contacts with the state are sufficient to satisfy the long arm statute and due process. We have found no case, and the defendant has not cited one, in which this court has required the use of evidence extrinsic to the marshal's return to prove actual receipt of service of process.

In the present case, we first note that the plaintiff did not rely solely upon the marshal's representations concerning service of process to establish actual notice. In addition to the marshal's initial return of service showing service by certified mail properly addressed to the secretary of the corporation pursuant to the corporate long arm statute, the plaintiff presented a supplemental return of service that contained the signed receipt card indicating that process had been delivered by the United States Postal Service to the defendant's proper address, and that an individual at that address acknowledged having received service by signing the return receipt card. Given this evidence, Judge Freed's finding that the defendant had received actual notice of the foreclosure action was not clearly erroneous. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 532–33, 457 A.2d 656 (1983) (recognizing rebuttable presumption that letter mailed was received in due course); *Console* v. *Torchinsky,* 97 Conn. 353, 356, 116 A. 613 (1922) (same); *Thompson* v. *Coe,* 96 Conn. 644, 657, 115 A. 219 (1921) (same); *Garland* v. *Gaines,* 73 Conn. 662, 664, 49 A. 19 (1901) (same); *Pitts* v. *Hartford Life & Annuity Ins. Co.,* 66 Conn. 376, 384, 34 A. 95 (1895) (same); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 52, pp. 259–60 (rebuttable presumption that letter duly mailed was received); 2 C. McCormick, Evidence (5th Ed. 1999) § 343, p. 439 ("A letter properly addressed, stamped and mailed is presumed to have been duly delivered to

the addressee. Reason: probability and the difficulty of proving delivery in any other way."). The defendant complains that the plaintiff failed to present evidence that the person who signed the return receipt acted on behalf of the defendant. In response, we cite the maxim that "[c]ommon sense is not to be left at the courthouse door." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 700, 882 A.2d 53 (2005). The trial court reasonably could have inferred that an individual ordinarily would not sign a return receipt for an envelope if the individual had no connection to the addressee. In this case, in which the court had before it evidence of certified mail delivery to the defendant properly addressed to the secretary of the corporation, and receipt of the papers by an individual there who evidenced that receipt by signing the return receipt card, we cannot conclude that the trial court's finding of actual notice is clearly erroneous.

Moreover, the defendant does not contend that it failed to receive notice of the foreclosure action but, rather, argues solely that the plaintiff failed, as a matter of law, to carry its burden of proving that the defendant had received actual notice. The defendant is uniquely situated to know whether the complaint actually failed to reach the defendant. If the defendant were to contest the evidence, alleging that, despite the signed return receipt, it did not in fact receive the papers, then the plaintiff might be required to produce additional evidence to meet its burden of proving actual notice. Such additional evidence was offered to prove the plaintiff's case in a similar case, *Phoenix State Bank & Trust Co.* v. *Whitcomb*, 121 Conn. 32, 183 A. 5 (1936). In that case, the defendant denied having received the mailed service of process, despite the plaintiff's proffer of a return receipt bearing what purported to be the defendant's signature. The plaintiff then presented a witness familiar with the defendant's signature to testify that the

signature was authentic. This court held that the trial court properly permitted the testimony to prove that the defendant had received actual notice of the suit. Id., 35–36.

When the evidence gives rise to a reasonable presumption of receipt, as it does in the present case, the fact finder may rely upon that presumption to establish receipt unless the defendant gives the fact finder a reasonable basis to question its truthfulness. See *Pitts* v. *Hartford Life & Annuity Ins. Co.*, supra, 66 Conn. 384 (presumption of receipt of letter in due course of mail rebuttable, "[b]ut in a case where there is no evidence to the contrary, as in this case, it is the duty of the jury or of the court to find the letter was received"), and cases cited therein. The defendant in the present case has not proffered any basis for questioning the presumption of receipt on the facts of this case.

The judgments are affirmed.

In this opinion the other justices concurred.