******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEFFREY NELSON *v.* TRADEWIND AVIATION, LLC
(AC 34625)
(AC 34838)

Keller, Mullins and Bear, Js.

*Argued September 26, 2014—officially released February 24, 2015*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Doherty, J.)

*Jeffrey J. Tinley*, with whom were *Amita S. Patel*, and, on the brief, *Stephen E. Pliakas*, for the appellant-appellee (defendant).

*Stephen J. Fitzgerald*, with whom was *Joshua R. Goodbaum*, for the appellee-appellant (plaintiff).

*Opinion*

BEAR, J. In this consolidated appeal, the defendant, Tradewind Aviation, LLC, appeals from the judgment of the trial court rendered following a jury trial in favor of the plaintiff, Jeffrey Nelson, and the plaintiff cross appeals from the court's punitive damages award and its decision to reserve the question of statutory prejudgment interest for itself instead of the jury. The defendant claims on appeal that the court improperly (1) denied its amended motion for judgment notwithstanding the verdict and to set aside the verdict, (2) failed to recognize that an absolute privilege should attach to the alleged defamatory statements, (3) failed to conclude that the element of malice, required to defeat its qualified privilege and to find defamation and intentional interference with a business expectancy, could not be proven because of the mandatory nature of its alleged defamatory disclosures under the Pilot Records Improvement Act of 1996, 49 U.S.C. § 44703 (h) (2012) (PRIA), and (4) granted the plaintiff's motion for punitive damages. In his cross appeal, the plaintiff claims that the court improperly (1) awarded punitive damages in an amount that was less than his cost of litigation, and (2) failed to instruct the jury on statutory prejudgment interest. We affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our review. The defendant hired the plaintiff as a second in command pilot on April 12, 2007. The plaintiff attended the defendant's mandatory training program, passed its "ground school," and successfully completed a "flight check ride" with the defendant's owner in May, 2007. As a second in command pilot, the plaintiff had a number of responsibilities, including assisting the pilot in command, collecting, weighing, and loading the passengers' baggage, and checking the balance of the total weight in the plane to ensure that its distribution was safe for flying. Over the course of the summer of 2007, the plaintiff copiloted 137 flights from New York and New Jersey to Martha's Vineyard and Nantucket, and he worked with a total of thirteen different pilots in command. All of the passengers on those flights arrived safely at their destinations, and none complained about the plaintiff's performance.

If one of the defendant's pilots was unable to fly safely, Kaj Wren, the defendant's chief pilot, would have removed him or her from flying status.[1] Similarly, the plaintiff's immediate supervisor, assistant chief pilot Adam Schaefer, had the authority to remove a pilot from a flight if he observed that the pilot was not competent to fly safely. Neither Wren nor Schaefer ever removed the plaintiff from flying status for a performance based reason or disciplinary reason. Although some senior pilots did complain about the plaintiff, he was never given a written warning, disciplined, or

suspended. Additionally, the plaintiff was never offered or sent for any additional training after he completed ground school.

The defendant operated six planes at a time during the 2007 summer season because of an increased demand for its services. During the following six month off-season, however, it operated only two planes, which meant that the number of employed pilots was cut from eighteen to six. At a meeting on August 28, 2007, the defendant's owner announced that he had more pilots than he needed for the upcoming off-season, and that there would be layoffs, with preference for continued employment given to those pilots who committed to stay for the full off-season. The plaintiff was concerned by that announcement because he was the "least experienced" among the recently hired pilots. The plaintiff subsequently committed to continue his employment for only one-half of the off-season.

Around this time, the defendant also required that the plaintiff submit to a random drug test. Schaefer requested the test because he believed the plaintiff was on drugs that day, as the plaintiff had bloodshot eyes, was fidgety, and was avoiding eye contact. The decision, however, had nothing to do with the plaintiff's performance as a pilot, and the test report indicated the reason for the test was "random selection." The plaintiff's test came back negative. The plaintiff never violated the defendant's drug or alcohol policy.

On September 7, 2007, Schaefer told the plaintiff that the defendant would be unable to continue to employ him. Schaefer said nothing about the plaintiff's performance and suggested that the plaintiff might wish to resign because it would "look better" to future employers. The plaintiff decided not to resign because it would render him ineligible for unemployment benefits, and, therefore, he was laid off. Schaefer gave the plaintiff a packet of unemployment paperwork and told him to go to the defendant's human resources office to complete it. The defendant's human resources office supervised the completion of the paperwork, which reflected that the plaintiff was laid off due to "Lack of Work."[2]

In December, 2007, the plaintiff interviewed with and was offered a job by Republic Airways (Republic). As part of his initial interview, the plaintiff completed and signed three forms required by PRIA. The first form, titled "Air Carrier and Other Records Request (PRIA)," authorized the defendant to provide Republic's third party representative, Phenix Group, Inc. (Phenix), with the plaintiff's records. The second form, titled "Authorization for Release of [Department of Transportation] Drug and Alcohol Testing Records Under PRIA and Maintained Under Title 49 Code of Federal Regulations (49 CFR) Part 40," authorized the defendant to provide Phenix with copies of the plaintiff's drug and alcohol testing records. The final form, titled "Airman Notice

and Right to Receive Copy—Air Carrier and Other Records (PRIA)," required that the defendant notify the plaintiff that his records were requested within twenty days of the request, provide the plaintiff with a complete copy of all of the documents provided to Phenix, and allow the plaintiff an opportunity to submit written comments to correct any inaccuracies in the records.

The defendant received the plaintiff's PRIA forms on December 24, 2007. Schaefer responded on behalf of the defendant, and faxed to Phenix the completed "Request for PRIA Pilots Records" form and accompanying records on January 16, 2008. In response to the first question on the form, which asked "[w]hat is the applicant's current employment status with your company or affiliates," Schaefer checked the box, "Terminated (Involuntary)." The fifth question read: "Within the past five years, has the applicant ever been removed from flying status for any performance or professional competency reason?" Schaefer responded, "Yes." After this form was faxed to Phenix, Julia Irving, a Republic employee, called Schaefer asking for information pertaining to the plaintiff's termination, and Schaefer transferred the call to Wren. After completing the telephone call with Irving, Wren instructed Schaefer to draft a letter that was faxed directly to Irving later that day. The letter stated: "[The plaintiff] was terminated on September 7, 2007, after he failed to perform to the company standard. Prior to that date he was given several opportunities to discuss the need for improvement as well as additional training to help him perform at the levels we needed."

On January 17, 2008, the defendant faxed the plaintiff's negative drug test report from the summer of 2007 directly to Irving with a cover sheet that stated: "[The plaintiff's] probable cause drug test result. The [defendant] was concerned that poor performance may have been caused by the use of drugs."

The defendant did not notify the plaintiff within twenty days of December 24, 2007, that the PRIA records request had been received. Additionally, despite receiving the plaintiff's request to receive a complete copy of all of the documents sent to Republic, the defendant sent to the plaintiff copies of only the records from his successful training. The defendant did not send the plaintiff a copy of its response to the "Request for PRIA Pilots Records" form that it sent to Phenix, which included the statements that he was terminated involuntarily and that he had been removed from flying status for performance or professional competency reasons. Similarly, the defendant did not send to the plaintiff a copy of the letter it sent directly to Republic, which stated that the plaintiff was terminated for failure to perform to the company standard and that he had been given opportunities to discuss the need for improvement. The defendant additionally did not provide the

plaintiff with a copy of the negative drug test report and the accompanying cover sheet that were sent directly to Republic. According to the PRIA forms, it was the defendant's obligation to send the plaintiff a complete copy of the records that it had sent to Republic. Because the defendant failed to send copies of all of these documents to the plaintiff, the plaintiff did not know about the additional records that the defendant had sent to Republic. Republic revoked its job offer to the plaintiff on January 17, 2008.

The plaintiff commenced this action against the defendant on December 19, 2008, and the case was tried to a jury in October, 2011. The jury found the defendant liable for defamation with malice and for intentional interference with a business expectancy. The jury found that the plaintiff proved by a preponderance of the evidence that the defendant published a defamatory statement about the plaintiff to Republic in January, 2008, that the defamatory statement was false, and that it was published with malice.[3] The jury further found that the plaintiff proved by a preponderance of the evidence that he had a reasonable potential opportunity of entering into an employment relationship with Republic, that the defendant was aware of that, and that the defendant intentionally interfered with the plaintiff's potential employment relationship with malice or out of some other improper motive. The jury awarded the plaintiff a total of $307,332.94 in damages, which consisted of $207,332.94 in economic damages and $100,000 in noneconomic damages. Furthermore, the jury found that the plaintiff was entitled to punitive damages. The court thereafter denied the defendant's amended motions to set aside the verdict, for judgment notwithstanding the verdict, and for remittitur, and thereupon rendered judgment for the plaintiff in accordance with the jury's verdict. The court then awarded $100,000 in punitive damages. These appeals followed. Additional facts and procedural history will be set forth as necessary.

I

DEFENDANT'S APPEAL

In its appeal, the defendant claims that the court improperly (1) denied its amended motion for judgment notwithstanding the verdict and to set aside the verdict, (2) failed to recognize that an absolute privilege should attach to the alleged defamatory statements, (3) failed to conclude that the element of malice, required to defeat its qualified privilege and to find defamation and intentional interference with a business expectancy, could not be proven because of the mandatory nature of its alleged defamatory disclosures under PRIA, and (4) granted the plaintiff's motion for punitive damages. We disagree.

A

The defendant first claims that the court improperly denied its amended motion for judgment notwithstanding the verdict and to set aside the verdict because none of the alleged statements by the defendant are defamatory as a matter of law and, therefore, cannot support either of the plaintiff's claims of defamation or intentional interference with a business expectancy. We disagree.

The following additional procedural history is relevant to this claim. On October 14, 2011, the jury returned a verdict in favor of the plaintiff on both the defamation and tortious interference claims. On October 24, 2011, the defendant filed a motion seeking a remittitur, and a motion for judgment notwithstanding the verdict and to set aside the verdict on the following grounds: (1) the defendant did not cause damage to the plaintiff, (2) any damage the defendant caused to the plaintiff would have resulted from the plaintiff's own actions, (3) the court improperly admitted hearsay statements, (4) the evidence was speculative, and (5) the court should take judicial notice of the plaintiff's prior admission that he was discharged, and not laid off.

More than three months after the jury returned its verdict, on January 27, 2012, the defendant moved to amend its motion for judgment notwithstanding the verdict and to set aside the verdict. In its amended motion, the defendant argued for the first time in the case: "The plaintiff's arguments centering on the alleged defamatory statements fail as a matter of law, because the statement that an employee was 'Terminated (Involuntary)' or 'terminated . . . after he failed to perform to the company standard,' cannot, as a matter of law, be libelous. The plaintiff argued to the jury that the defendant's action in checking a box in a 'Request for PRIA Records' marked 'Terminated (Involuntary)' was maliciously defamatory. . . . In addition, the plaintiff argued that the statement to Republic Airways that '[The plaintiff] was terminated on September 7, 2007, after he failed to perform to the company standard' was also maliciously defamatory. . . . These statements are not defamatory as a matter of law." On February 6, 2012, the plaintiff objected to the defendant's motion to amend, but the court overruled the plaintiff's objection and granted the motion to amend, stating that the "[c]ourt allows defendant's motion to amend the motion to set aside verdict and will take into consideration plaintiff's argument as to why such amendment is insufficient to permit the court to set aside the verdict."[4]

The court denied the defendant's motion for remittitur and amended motion for judgment notwithstanding the verdict and to set aside the verdict on May 1, 2012, and the defendant appealed on May 18, 2012.[5] On December 20, 2011, the plaintiff filed a motion to set punitive damages and for statutory prejudgment interest pursuant to General Statutes § 37-3a. On June 29,

2012, the court awarded the plaintiff $100,000 in punitive damages, but declined to award prejudgment interest. On July 17, 2012, the defendant amended its appeal to incorporate the court's judgment awarding punitive damages. On July 18, 2012, the plaintiff filed a cross appeal challenging the court's punitive damages award and the court's refusal to allow the jury to decide whether prejudgment interest should be awarded.

On November 28, 2012, the defendant filed a motion for articulation of the court's decision denying its amended motion for judgment notwithstanding the verdict and to set aside the verdict, and, on November 30, 2012, the plaintiff moved to consolidate his appeal and the defendant's appeal. On January 16, 2013, this court dismissed, on its own motion, the defendant's original appeal for lack of a final judgment[6] and granted the plaintiff's motion to consolidate. On June 11, 2013, the court denied the defendant's motion for articulation. The defendant filed a motion for review of the denial of its motion for articulation on June 21, 2013.

On July 24, 2013, this court granted review, but denied the relief requested. In the interim, however, on July 9, 2013, the court issued an amended articulation stating: "On June 11, 2013, this court (*Doherty, J.*) denied the defendant's motion for articulation. This court hereby amends that order as follows. Said articulation, dated June 11, 2013, is amended for the limited purpose of stating the fact that the court did not fail to consider and rule upon any of the issues raised in the defendant's amended motion for judgment notwithstanding the verdict/motion to set aside the verdict dated January 27, 2012. The court did, in fact, consider each and every issue raised in the said amended motion and concluded that none of the issues raised therein were sufficient to permit the court to set aside the verdict. Having made this amendment, the articulation of June 11, 2013, remains otherwise unchanged." On July 25, 2013, the defendant filed a motion for review of the court's amended articulation. This court granted the motion for review, but denied the relief sought on September 11, 2013.

We first set forth the legal principles and relevant standard of review that inform our analysis. "It is well settled that a libel is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business." *Proto* v. *Bridgeport Herald Corp.*, 136 Conn. 557, 566, 72 A.2d 820 (1950); see also *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 543–44, 733 A.2d 197 (1999) (No dispute that statements in letter of termination accusing plaintiff of "display[ing] bad judgment and [violating] established procedures regarding restraint of a patient" are per se defamatory. [Internal quotation marks omitted.] "[T]hey [charge]

improper conduct or lack of skill or integrity in one's profession or business and [are] of such a nature that [they are] calculated to cause injury to one in his profession or business." [Internal quotation marks omitted.]). "Whether words are actionable per se is a question of law for the court. . . . All of the circumstances connected with the publication of defamatory charges should be considered in ascertaining whether a publication was actionable per se. The words used, however, must be accorded their common and ordinary meaning, without enlargement by innuendo." (Citations omitted.) *Miles* v. *Perry*, 11 Conn. App. 584, 602–603, 529 A.2d 199 (1987).

On appeal, the defendant argues that its alleged statements that the plaintiff was "Terminated (Involuntarily)," "failed to perform to the company standard," and "was given several opportunities to discuss the need for improvement as well as additional training to help him perform at the levels we needed" are not actionable defamatory statements as a matter of law. The defendant argues that "[t]he rule has achieved virtually universal recognition that an employer's statement that an employee has been 'discharged' (or 'fired' or 'terminated' or a substantively similar statement) is not actionable as a matter of law." The defendant also argues that the statements that the plaintiff was subjected to a "probable cause drug test" because "the [defendant] was concerned that poor performance may have been caused by the use of drugs" are not actionable as defamation. The defendant argues that the statements were expressions of opinion regarding the plaintiff's ability to meet the defendant's subjective performance requirements and, therefore, are not defamatory as a matter of law.

In light of the statements made and the manner in which the statements were made, we conclude that the evidence reasonably supported, and that the jury reasonably could have concluded, that the statements "[charged] improper conduct or lack of skill or integrity in one's profession or business and [are] of such a nature that [they are] calculated to cause injury to one in his profession or business." (Internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, supra, 249 Conn. 544.

Although the defendant on appeal relies on the opinions it cited to the trial court, and a number of additional opinions that were not brought to the attention of the trial court,[7] we note that most of those opinions are not binding on this court or the trial court for various reasons; see, e.g., *Porter* v. *Orient Ins. Co.*, 72 Conn. 519, 529, 45 A. 7 (1900) ("while a State may make laws binding its own citizens . . . it cannot so bind citizens of other States" [internal quotation marks omitted]); *McDonald* v. *Rowe*, 43 Conn. App. 39, 43, 682 A.2d 542 (1996) ("[t]rial court cases do not establish binding

precedent"); and furthermore, we note that the facts in those opinions are distinguishable from the facts of this case that the jury reasonably could have found, or they involve applications of law that differ from our law. Unlike the cases relied upon by the defendant which involve neutral statements, a retraction and subsequent correction of the error, or which were resolved based on law that is different than the law in Connecticut; see footnote 7 of this opinion; the present case involves intentionally false information included in several nonprivileged statements that were published to a potential employer and hidden from the plaintiff by the defendant, despite his documented request for a complete copy of the records provided by the defendant to that potential employer. We, therefore, reject the defendant's claim that the alleged statements were not actionable as defamation as a matter of law.

B

The defendant next claims that the court improperly failed to recognize that an absolute privilege should attach to the alleged defamatory statements. The defendant argues that the statements should have been protected by an absolute privilege, because the defendant was required to make the statements under PRIA and because of the policy considerations underlying absolute privilege—" 'encouraging the free flow of information' " and protecting those who are required to speak so as not to curtail communication. We decline to reach the merits of this claim because the defendant failed to raise it to the trial court.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5 ([t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial). The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004); accord *Sgueglia* v. *Milne Construction Co.*, 212 Conn. 427, 432 n.5, 562 A.2d 505 (1989); see also *McKiernan* v. *Caldor, Inc.*, 183 Conn. 164, 166, 438 A.2d 865 (1981) (issue briefly suggested in trial court is not distinctly raised). The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim— would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis in original; internal quotation marks omitted.)

*Remillard* v. *Remillard*, 297 Conn. 345, 351–52, 999 A.2d 713 (2010).

A review of the record reveals that this claim was never raised before the court or the jury. We, therefore, decline to review it.

C

The defendant next claims that the court improperly failed to conclude that the element of malice, required to defeat its qualified privilege as a former employer and to find defamation and intentional interference with a business expectancy, could not be proven, because the mandatory nature of its alleged defamatory disclosures under PRIA negates the intent necessary to prove malice. The defendant argues that it communicated with Republic because of the plaintiff's PRIA request and with the plaintiff's consent to do so, and that "there is no evidence that [the defendant] did or would publish any information about [the plaintiff's] job performance or the reasons for his termination to Republic absent the PRIA mandate and [the plaintiff's] request."[8] We disagree.

We begin by setting forth the relevant legal principles and the proper standard for our review. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 291 Conn. 620, 627–28, 969 A.2d 736 (2009).

"A defendant may shield himself from liability for defamation by asserting the defense that the communication is protected by a qualified privilege. . . . When considering whether a qualified privilege protects a defendant in a defamation case, the court must resolve two inquiries. . . . The first is whether the privilege applies, which is a question of law over which our review is plenary. . . . The second is whether the applicable privilege nevertheless has been defeated through its abuse, which is a question of fact. . . . In a defamation case brought by an individual who is not a public figure, the factual findings underpinning a trial court's decision will be disturbed only when those findings are clearly erroneous, such that there is no evidence in the record to support them." (Citations omitted.) Id., 628–29.

Our Supreme Court has recognized "a qualified privilege for the employment references of current or former

employers that were solicited *with the employee's consent.*" (Emphasis added.) *Miron* v. *University of New Haven Police Dept.*, 284 Conn. 35, 45, 931 A.2d 847 (2007). "[T]he integrity of employment references not only is essential to prospective employers, but also to prospective employees, who stand to benefit from the credibility of positive recommendations." Id., 45–46. "It also would encourage a culture of silence not to afford a qualified privilege to employment references that are made in good faith and without improper motive."[9] (Internal quotation marks omitted.) Id., 46.

"As a general matter, a qualified privilege in a defamation case may be defeated if it can be established that the holder of the privilege acted with malice in publishing the defamatory material. . . . [Our Supreme Court] has held that malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. . . . Consistent with this broad view, for more than 100 years, [our Supreme Court] has concluded that a qualified privilege is lost upon a showing of *either* actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, *or* malice in fact, i.e., publication of a false statement with bad faith or improper motive." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, supra, 291 Conn. 630.

"[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; internal quotation marks omitted.) Id., 637–38.

Pursuant to PRIA, an air carrier looking to hire an individual as a pilot must request and receive, inter alia, certain records from any air carrier or person who has employed that individual as a pilot of a civil or public aircraft during the five year period preceding the date of the employment application. 49 U.S.C. § 44703 (h) (2012). The records to be provided include, but are not limited to, records pertaining to "(I) the training, qualifications, proficiency, or professional competence of the individual, including comments and evaluations made by a check airman designated in accordance with section 121.411, 125.295, or 135.337 of [title 14, Code of Federal Regulations]; (II) any disciplinary action taken with respect to the individual that was not subsequently overturned; and (III) any release from employment or resignation, termination, or disqualification with

respect to employment." 49 U.S.C. § 44703 (h) (1) (B) (i) and (ii) (2012). The records shall be provided "not later than [thirty] days after receiving the request." 49 U.S.C. § 44703 (h) (5) (2012). An air carrier requesting such records "shall be required to obtain written consent to the release of those records from the individual that is the subject of the records requested . . . ." 49 U.S.C. § 44703 (h) (2) (A) (2012). The individual who is the subject of the records shall be provided "(A) on or before the 20th day following the date of receipt of the request, written notice of the request and of the individual's right to receive a copy of such records; and (B) . . . a copy of such records, if requested by the individual." 49 U.S.C. § 44703 (h) (6) (A) and (B) (2012). "An air carrier that maintains or requests and receives the records . . . shall provide the individual with a reasonable opportunity to submit written comments to correct any inaccuracies contained in the records before making a final hiring decision with respect to the individual." 49 U.S.C. § 44703 (h) (9) (2012).

In the present case, the alleged defamatory statements included: (1) checking the box "Terminated (Involuntarily)" in response to the question "[w]hat is the applicant's current employment status with your company or affiliates"; (2) responding "Yes" to the question "[w]ithin the past five years, has the applicant ever been removed from flying status for any performance or professional competency reason"; (3) sending the following letter to Republic: "[The plaintiff] was terminated on September 7, 2007, after he failed to perform to the company standard. Prior to that date he was given several opportunities to discuss the need for improvement as well as additional training to help him perform at the levels we needed"; and (4) sending the following cover letter with the plaintiff's negative drug results: "[The plaintiff's] probable cause drug test result. The [defendant] was concerned that poor performance may have been caused by the use of drugs."

A review of the evidence reveals that the jury reasonably could have concluded that the defendant's defamatory statements were made with knowledge that they were false and with an improper motive. The jury reasonably could have found that the plaintiff was laid off due to lack of work, that neither Wren nor Schaefer ever removed the plaintiff from a flight for performance or professional competency reasons, that the plaintiff was never offered or sent for any additional training, that the decision to send the plaintiff for a drug test had nothing to do with the plaintiff's performance as a pilot, and that the drug test report indicated the reason for the test was "random selection." Additionally, the jury reasonably could have found that the statements were made with an improper motive in light of the timing and manner in which the statements were made. Despite receiving the plaintiff's request to receive a complete copy of all of the documents sent to Republic,

the defendant did not send the plaintiff a copy of the completed "Request for PRIA Pilots Records" that stated he was terminated involuntarily and that he had been removed from flying status for performance or professional competency reasons, a copy of the letter that stated he was terminated for failure to perform to the company standard and had been given opportunities to discuss the need for improvement, or a copy of the negative drug test report and cover sheet that stated he was sent for the test because he was suspected of using drugs.

"In determining whether there was sufficient evidence to show actual malice, we are mindful that litigants have a constitutional right to have issues of fact determined by the jury. . . . And so the credibility of the witnesses and the weight to be accorded their testimony is a matter for the jury to decide. Further, we refrain from choosing among inferences as this is another jury function." (Citation omitted.) *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 540, 368 A.2d 125 (1976). Accordingly, we conclude that there was sufficient evidence to support the jury's finding that the alleged defamatory statements were made with malice. The defendant argues that the mandatory nature of its alleged defamatory statements under PRIA negates the intent necessary to prove malice. This argument, however, assumes that an employer who is required or mandated to make a disclosure cannot act with malice. That assumption is simply not accurate. A qualified privilege is provided for those disclosures made "in good faith and without improper motive." *Miron* v. *University of New Haven Police Dept.*, supra, 284 Conn. 46. There was sufficient evidence from which the jury could find the defendant abused and forfeited its qualified privilege.

D

The defendant's final claim is that the court improperly awarded punitive damages because the jury's finding of actual malice is unsupported by the evidence. We disagree.

The following additional facts are relevant. On December 20, 2011, the plaintiff filed a motion to set the punitive damages award in accordance with the jury's verdict and statutory prejudgment interest pursuant to § 37-3a. On June 29, 2012, in a short order, the court stated: "After a review of the record, trial preparation, trial proceedings including the verdict after trial and the claims of the plaintiff for punitive damages in the form of attorney's fees, the court awards the plaintiff punitive damages in the amount of $100,000. The court declines to award statutory prejudgment interest." On July 17, 2012, the defendant amended its appeal to incorporate the court's judgment awarding punitive damages.

We first set forth the relevant standard of review and the legal principles that inform our analysis. "In awarding punitive damages . . . [t]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, 149 Conn. App. 283, 313, 88 A.3d 589, cert. granted, 312 Conn. 920, 94 A.3d 1201 (2014). "[P]unitive damages are allowable in a libel action where malice is established . . . ." *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 127, 222 A.2d 220 (1966); see also *Gambardella* v. *Apple Health Care, Inc.*, supra, 291 Conn. 628 ("to recover punitive damages, a plaintiff must prove actual malice, regardless of whether the plaintiff is a public figure").

In light of our determination in part I C of this opinion, that there was sufficient evidence to support the jury's finding of actual malice, we conclude that the court did not abuse its discretion in awarding punitive damages.

II

PLAINTIFF'S CROSS APPEAL

In his cross appeal, the plaintiff claims that the court improperly (1) awarded punitive damages in an amount that was less than his cost of litigation and (2) failed to instruct the jury on statutory prejudgment interest. We disagree.

The following facts and procedural history are relevant to our review of these claims. On October 14, 2011, after a seven day trial, the jury returned a verdict for the plaintiff on both counts. The jury found that the plaintiff suffered damages as a result of the defendant maliciously publishing a defamatory statement about the plaintiff and tortiously interfering with his potential employment relationship with Republic. The jury awarded the plaintiff a total award of $307,332.94, which consisted of $207,332.94 in economic losses and $100,000 in noneconomic losses. The jury also found that the court should award punitive damages because, as stated in the jury interrogatory, "[the plaintiff] proved by a preponderance of the evidence that [the defendant] acted with intentional design to injure [the plaintiff] or with reckless disregard [as] to whether [its] conduct would injure [the plaintiff]." The amount of punitive damages was to be set by the court. Additionally, in his request to charge, submitted prior to jury deliberations, the plaintiff sought a jury interrogatory on prejudgment interest under § 37-3a. The defendant's request to charge and proposed verdict form indicated that the question of prejudgment interest should be decided by the court, and not be presented to the jury. The court agreed with the defendant, refused to charge the jury on the issue of interest, and reserved the question for itself.

Accordingly, on December 20, 2011, the plaintiff filed

a motion to set the punitive damages award and for statutory interest. In support of his motion, the plaintiff submitted a memorandum of law and two affidavits, along with exhibits consisting of invoices and receipts for litigation costs and attorney's fees. The plaintiff asked the court to set punitive damages in an amount equal to his litigation costs, which he claimed totaled $123,390.98, and to award prejudgment interest in an amount consistent with § 37-3a and the demands of equity. On February 17, 2012, the defendant filed an objection to the plaintiff's motion, arguing for a $7666.50 reduction for an unreasonable hourly rate, a $3878.45 reduction for an unnecessary deposition, and a $5894.88 reduction for the expenses incurred by the plaintiff having to litigate the case in Connecticut, rather than his home state of Oregon. If the court adopted the defendant's arguments and deducted its suggested amounts, it would have awarded punitive damages of $105,951.15.

On June 29, 2012, the court issued a short order stating: "After a review of the record, trial preparation, trial proceedings including the verdict after trial and the claims of the plaintiff for punitive damages in the form of attorney's fees, the court awards the plaintiff punitive damages in the amount of $100,000. The court declines to award prejudgment interest." On November 30, 2012, the plaintiff filed a motion for articulation, and on June 11, 2013, the court provided the following articulation: "The court declines to award prejudgment interest, which is discretionary under § 37-3a . . . . [T]he court finds that $100,000 is a reasonable award of punitive damages by way of attorney's fees in this case." The plaintiff did not file a motion for review of the court's articulation.

A

The plaintiff first claims that the court improperly awarded punitive damages in an amount that was less than his cost of litigation.[10] The plaintiff argues that the court never calculated his litigation costs, but "[r]ather the court looked at the plaintiff's extensive evidence of fees and costs totaling $123,390.98, compared it to the defendant's proposed fees and costs of $105,951.06, and decided—in seemingly arbitrary fashion—to award punitive damages of $100,000." The plaintiff argues that the court's award bore no relation to the amounts submitted by either party. We disagree.

Our standard of review for an award of punitive damages is well settled. "[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 767, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001).

"If awarded, punitive damages are limited to the costs of litigation less taxable costs, but, within that limitation, the extent to which they are awarded is in the sole discretion of the trier. . . . Limiting punitive damages to litigation expenses, including attorney's fees, fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury." (Citations omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammdi*, 270 Conn. 291, 335, 852 A.2d 703 (2004).

After reviewing the evidence in the record concerning the attorney's fees and costs incurred by the plaintiff, we are unable to conclude that an award of $100,000 in punitive damages constituted an abuse of discretion. "The trial judge who awarded punitive damages is the same judge who presided over the entire trial and post-trial proceedings, and, therefore, he had a firm knowledge from which to make a reasonable determination as to the time and resources necessary . . . to pursue [these] claim[s]." Id., 337. We, therefore, conclude that the court did not abuse its discretion in awarding $100,000 in punitive damages.

B

The plaintiff next claims that the court improperly failed to instruct the jury on prejudgment interest pursuant to § 37-3a. The plaintiff argues that the court improperly invaded the province of the jury because his entitlement to interest was a factual determination that should have been submitted to the jury. The plaintiff argues that the jury properly could have awarded prejudgment interest because it could have found that the defendant owed the plaintiff the salary he would have earned at Republic had the defendant not tortiously interfered with his employment. The plaintiff argues, therefore, that the appropriate remedy is to remand to the court for the empanelment of a new jury to consider an award of statutory prejudgment interest. We disagree.

Section 37-3a (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money *after it becomes payable.*" Section 37-3a (b) provides in relevant part: "The awarding of interest in such cases is discretionary." (Emphasis added.) Whether interest should be awarded pursuant to § 37-3a is "*a jury question* in those cases that involve damages for the detention of money *after it becomes payable.*" (Emphasis added; internal quotation marks omitted.) *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 738, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). Thus, the question is whether the present case is one that involved damages for the deten-

tion of money after it became payable.

"In the jury cases . . . in which prejudgment interest was properly a jury question . . . the underlying claims were for *liquidated sums* due for services or services and materials or for reimbursement of *specific sums.*" (Citations omitted; emphasis added.) Id., 739. "Section 37-3a provides a substantive right that applies only to certain claims. . . . It does not allow prejudgment interest on claims that are not yet payable, such as awards for punitive damages . . . or on claims that do not involve the wrongful detention of money, such as personal injury claims . . . . Under § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances. . . . There are well established propositions that § 37-3a provides for interest on money detained after it becomes due and payable, that the question under that statute is whether the money was wrongfully withheld . . . . The statute, therefore, applies to claims involving the wrongful detention of money *after* it becomes due and payable." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 739–40. Therefore, "[t]o award § 37-3a interest, two components must be present. First, the claim to which the prejudgment interest attaches must be a claim for a liquidated sum of money wrongfully withheld and, second, the trier of fact must find, in its discretion, that equitable considerations warrant the payment of interest." (Internal quotation marks omitted.) *Reyes* v. *Chetta*, 143 Conn. App. 758, 770, 71 A.3d 1255 (2013).

"Personal injury claims seek to make persons whole by monetarily compensating them for a loss negligently caused by others. Damages are typically uncertain and the purpose of the damages is to restore the injured, as nearly as money can, to the status they were enjoying and would have continued to enjoy prior to the negligent act. Such claims do not seek to regain money detained by another." *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 741–42.

The damages sought in the present case for defamation and tortious interference with a business expectancy are similar to the damages sought in a personal injury claim in negligence. The damages sought were in an unliquidated sum, and were not already payable or being wrongly withheld. See *Reyes* v. *Chetta*, supra, 143 Conn. App. 770–71 (court's award of prejudgment interest was improper for claim of tortious interference with business expectancy because plaintiff did not assert claim for liquidated sum of money that had been wrongfully withheld from him). On the basis of our review of the record, we conclude that § 37-3a does not apply to these facts and that, therefore, the plaintiff was not entitled to an award of prejudgment interest pursuant to the statute. Accordingly, the court did not

err in reserving and deciding the question.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that, although Wren was not called as a witness at trial, portions of his deposition were read into the record for the jury's consideration. See generally Practice Book § 13-31.

[2] The defendant opposed the plaintiff's application for unemployment benefits. In its opposition, the defendant stated that: "[The plaintiff] was let go for failure to meet the company standard. [The plaintiff] repeatedly arrived at work late, his uniform was not neat, and he failed to fly to commercial standards." The plaintiff did not claim this statement as actionable defamation at trial because he did receive unemployment benefits, and, therefore, did not suffer any special damages.

[3] We note that written interrogatories were provided to and answered by the jury in this case.

[4] We note that, prior to trial, the defendant did not file a motion to strike arguing that the complaint was legally insufficient because the statements did not constitute defamation as a matter of law. Additionally, although the defendant filed a motion for summary judgment, motions in limine, and a "motion to dismiss" for failure to make out a prima facie case, this argument was not raised in any of those motions. The argument was also not raised as a special defense, and the defendant did not request or submit jury interrogatories on its special defenses. Finally, the defendant did not make the argument in its original motion for judgment notwithstanding the verdict and to set aside the verdict.

[5] Although the defendant appealed from the denial of its motion for remittitur, it does not raise any arguments related to that motion on appeal. As a result, any claims arising out of the denial of that motion are abandoned. See *Gosselin* v. *Gosselin*, 110 Conn. App. 142, 151, 955 A.2d 60 (2008).

[6] At the time the defendant's original appeal was filed, the court had not yet decided the amount of punitive damages and the plaintiff's claim for prejudgment interest. In dismissing the defendant's original appeal, this court relied on *Balf Co.* v. *Spera Construction Co.*, 222 Conn. 211, 211–12, 608 A.2d 682 (1992) (no final judgment where claim for discretionary award of prejudgment interest pending at trial court), and *Lord* v. *Mansfield*, 50 Conn. App. 21, 24, 28, 717 A.2d 267 (no final judgment where amount of punitive damages not determined), cert. denied, 247 Conn. 943, 723 A.2d 321 (1998). *Lord* was subsequently reversed by *Hylton* v. *Gunter*, 313 Conn. 472, 479, 97 A.3d 970 (2014) ("a judgment of the trial court awarding common-law punitive damages limited to attorney's fees is final, despite the fact that the court has not yet determined the amount of those fees").

[7] We note that the defendant cited three opinions to the trial court in its amended motion for judgment notwithstanding the verdict and to set aside the verdict—*Terry* v. *Hubbell*, 22 Conn. Supp. 248, 167 A.2d 919 (1960), *Ricci* v. *Crowley*, 333 Mass. 26, 127 N.E.2d 652 (1955), and *Elias* v. *Youngken*, 493 A.2d 158 (R.I. 1985). The additional case citations provided by the defendant in its appellate briefs include, *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 734 A.2d 112 (1999); *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 19 A.3d 215 (2011); *Mamou* v. *Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 81 Cal. Rptr. 3d 406 (2008); *Miles* v. *Banc of America Securities*, California Court of Appeal, First District, Docket No. A111086 (June 27, 2007) (2007 WL 1830791); *Gould* v. *Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 37 Cal. Rptr. 2d 718 (1995); *Jensen* v. *Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 18 Cal. Rptr. 2d 83 (1993); *Taradash* v. *Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313 (1993); *Welch* v. *Tellabs Operations, Inc.*, Superior Court of Massachusetts, Middlesex County, Docket No. 00-617E (Sept. 24, 2001) (14 Mass. L. Rptr. 44); *Gant* v. *Mahoney, Dougherty, Mahoney*, Court of Appeals of Minnesota, Docket No. C6-90-571 (July 31, 1990) (1990 WL 105956); and *Larson* v. *Sysco Corp.*, 767 P.2d 557 (Utah 1989).

[8] The defendant also argues that the plaintiff failed to prove malice because where the named defendant is an organization, such as a limited liability company, the plaintiff carries the burden of identifying the individual within the organization that acted with malice. The plaintiff notes that the defendant failed to preserve this argument at trial. We agree with the plaintiff. "[This court] ordinarily do[es] not address issues that have not been properly raised before the trial court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 33, 717 A.2d 77 (1998); Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

[9] In the present case, the plaintiff signed forms authorizing the defendant to provide his employment records to Republic. The trial on this issue, therefore, centered on whether the defendant abused and forfeited its qualified privilege by acting with malice. The plaintiff claimed that the defendant was angered by and acted maliciously after his successful claim for unemployment compensation benefits, which the defendant had discouraged him from making. The plaintiff also claimed that some of the defendant's statements were beyond the scope of the employment records protected by the PRIA qualified privilege.

[10] The defendant argues that the record is not adequate for review of this claim because the plaintiff never filed a motion for review of the court's articulation. We disagree. Practice Book § 61-10 (a) provides in relevant part, "[i]t is the responsibility of the appellant to provide an adequate record for review." In addition to copies of both of the court's orders pertaining to the award of punitive damages, the plaintiff has provided a copy of all of the documents, affidavits, and exhibits submitted to the court. These documents provide an adequate record for the resolution of the plaintiff's claim as to the amount of the punitive damages award. Accordingly, we review this claim on the merits.

---